```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
NANCY A. TERMINELLO,                :
                                    :
                Plaintiff,          :
                                    :
         -against-                  :    Memorandum Opinion
                                    :        & Order
MICHAEL J. ASTRUE,                  :    05 Civ. 9491 (SCR)(JFK)
Commissioner of Social Security,    :
                                    :
                Defendant.¹         :
-----------------------------------X
```
**JOHN F. KEENAN, United States District Judge:**

This is an action for review of the Commissioner's decision that plaintiff Nancy A. Terminello is not entitled to disability insurance benefits. Currently pending are cross-motions for judgment on the pleadings. For the reasons below, the Commissioner's motion is granted, and plaintiff's motion is denied.

### Background

Ms. Terminello suffers from a heart condition, chronic chest pain, fatigue and anxiety, and claims that she has been unable to work since January 1, 2004. At the time of the onset of her alleged disability, she was forty-four years old, had a

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Astrue is substituted as defendant for his predecessor in office, Jo Anne B. Barnhart. This motion is before me with the consent of the Honorable Stephen Robinson, before whom the motion originally was filed. See Rule 13 of the Local Rules for the Division of Business among District Judges.

1

high school diploma, and was working eight hours per week as a receptionist in a medical office in Bronx, N.Y.

On March 10, 2004, Ms. Terminello filed an application for disability insurance benefits under the Social Security Act (the "Act"). After her application was denied at the initial level of review, she requested a hearing before an administrative law judge ("ALJ"). At the hearing which was held on August 5, 2005, plaintiff was represented by counsel. The evidence presented to the ALJ consisted of Ms. Terminello's medical records, which included functional assessments by Ms. Terminello's treating physicians and a state agency physician, and Ms. Terminello's own testimony about her limitations.

## I. Record Medical Evidence

The medical evidence in the record comprises the reports of Dr. Marshall I. Matos, Ms. Terminello's treating cardiologist, Dr. Norbert W. Sander, another of her treating physicians, and state agency physician Dr. Carol A. Wakeley. The findings of each of these medical professionals are summarized below.

A. Dr. Marshal I. Matos

Ms. Terminello has a history of cardiac impairment. She has been treated for mitral valve disease and an atrial septal defect[2] since at least May 1986, when she began seeing her

---

[2] An atrial septal defect is "a congenital defect in the septum between the atria of the heart, due to failure of the foramen

2

treating cardiologist, Dr. Marshall I. Matos. (Transcript of Administrative Record ("Tr.") 174.) After cardiac catheterization in February 1999, Dr. Matos performed a closure/repair of plaintiff's atrial septal defect on June 30, 1999. (Id.) Ms. Terminello claimed to have lost her prior job as a medical biller after this procedure because her employer could not hold open her position during her recovery. (Tr. 54, 239.) After the procedure, plaintiff began to complain to Dr. Matos of chronic chest discomfort, resulting in a removal of her sternal wires by Dr. Matos on April 19, 2000. (Tr. 174.) Since then, Ms. Terminello has complained of chronic chest pain and fatigue interfering with her ability to work.

In April 2004, Dr. Matos reported on plaintiff's recent visit to his office. During that visit, Ms. Terminello stated that her chronic chest discomfort was relieved in the evenings with the medication Aleve and that she was fatigued by day's end. (Tr. 174.) She denied shortness of breath, palpitations and dizziness. (Id.) Her other medications included Kerlone, Zomig and aspirin. (Id.) Her most recent echocardiogram, performed on August 7, 2003, reflected normal left ventricular size and systolic function. (Tr. 175.) The test also revealed a calcified anterior mitral valve leaflet with moderate mitral

---

primum or secundum to close normally." Stedman's Medical Dictionary (27th ed. 2000)

3

regurgitation, and mild tricuspid valve regurgitation. (Id.) Ms. Terminello had not undergone any recent cardiac stress testing. (Id.) On reports dated July 1, 2004, October 22, 2004, and March 3, 2005, Ms. Terminello again denied palpitations or dizziness. Dr. Matos specifically noted that she was doing well on the October 22, 2004 and March 3, 2005 reports.

B.  Dr. Norbert W. Sander

Dr. Nortbert W. Sander, Ms. Terminello's treating physician since October 2000, reported on her condition in connection with her application for disability insurance benefits based on her December 15, 2003 visit to his office. (See Tr. 160-164.) Dr. Sander found that Ms. Terminello suffered from "fatigue" and "pressure [and] aching pain" in her chest, including atrial arrhythmia. (Tr. 160-61.) He also noted that she had normal blood pressure, showed no signs of psychiatric disorder, and that her episodes of fatigue and pain lasted for three to five hours daily. (Id.) Without specifying the limitations, Dr. Sander opined that Ms. Terminello's abilities to lift and carry, to stand or walk, and to push or pull were limited, including her postural and manipulative functioning. (Tr. 163.) Additionally, Dr. Sander listed her medications as Aleve, Vioxx and Kerlone, and noted that Ms. Terminello's chest pain was precipitated by work, stress or lifting, and relieved by rest and medication. (Tr. 161.)

On or about July 5, 2005, Dr. Sander filled out a physical assessment form on Ms. Terminello. This form indicates that plaintiff's impairment did not impact her ability to stand, walk or sit. (Tr. 190-91.) It also states that Ms. Terminello could lift less than ten pounds and that pushing and pulling were affected by her impairment. (Id.) Dr. Sander's medical report offered a diagnosis of atrial septal defect, chronic chest pain, and chronic fatigue syndrome, with treatment including monthly vitamin B12 shots and a cardiologist follow-up. (Tr. 197.)

Dr. Sander also assessed Ms. Terminello's mental ability to do work-related activities on a day-to-day basis in a regular work setting on or about August 1, 2005. He noted that plaintiff had no useful ability to function in this area because her pain and depression put her under stress. (Tr. 228-31.) However, the report noted that Ms. Terminello's abilities to make occupational and performance adjustments were good, very good, or unlimited. (Tr. 229-31.) Specifically, Dr. Sander opined that plaintiff had an "Unlimited/Very Good" ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors and deal with work stress, and a good ability to maintain attention and concentration in carrying out job instructions. (Tr. 229-30.) Dr. Sander also indicated that plaintiff had no impairment except when her chest pain was

present, opining that she could not be in any "stressful or exerting environments" when in pain. (Tr. 230-31.)

Beginning in May 2000, Ms. Terminello worked approximately eight hours per week as a "fill-in" receptionist for Dr. Sander. (Tr. 54, 236.) The ALJ considered this fact, among others, in discrediting the testimony of Dr. Sander regarding plaintiff's stress and her ability to function in a work setting. (Tr. 16.)

C. Dr. Carol A. Wakeley

In April 2004, state agency physician Dr. Carol A. Wakeley examined the evidence of the administrative record to assess Ms. Terminello's residual functional capacity. Without a direct examination of her, Dr. Wakeley opined that, in an eight hour workday, Ms. Terminello could occasionally carry up to fifty pounds and frequently carry up to twenty-five pounds, could sit and stand or walk for up to six hours, and had no limitations with pushing or pulling. (Tr. 166.) Dr. Wakeley further determined that plaintiff had no other postural or manipulative limitations, and that she had dexterity in using her fingers. (Tr. 167-68.) Dr. Wakeley added that Ms. Terminello's chest pain was "clearly non-cardiac in nature" and that her statement that she can walk only one block because of pain and fatigue was not credible. (Tr. 168.)

II. **Ms. Terminello's Testimony**

6

At the time of the hearing, Ms. Terminello lived in a two-story home with her eighteen-year-old son. (Tr. 77, 235.) She testified that, for the past five years, she worked about eight hours per week as a "fill-in receptionist" in the Bronx medical office of her treating physician, Dr. Sander. (Tr. 237.) For the ten years before that, from September 1990 to June 1999, Ms. Terminello worked as a medical biller. (Tr. 54.) This involved coding medical claims, doing paperwork, and making phone calls. (Tr. 238-39.) On her initial disability report, plaintiff indicated that the job as a medical biller was "sedentary," did not require any lifting and that she sat for five hours in a six hour workday. (Tr. 54-55.)

At the hearing, Ms. Terminello testified that her "chronic chest pain and chronic fatigue syndrome" kept her from working. (Tr. 239.) She typically awoke between eight and nine in the morning and would only work a couple of hours before coming home to rest on a good day. (Tr. 242.) On a bad day, plaintiff would have to rest all day. (Id.) She testified that she did little housework or cooking. (Tr. 242-43.) In particular, Ms. Terminello mentioned that she cannot lift or do anything strenuous and does no more than "maybe wash a glass, a dish in the sink, or put it in the dishwasher." (Tr. 243.)

Ms. Terminello also confirmed her prescriptions and treatment from her treating physicians, Dr. Sander and Dr.

7

Matos. (Tr. 240-41.) She reported that Aleve took some of the "edge off" her chest pain, but that her medications made her "more tired than [she] should normally be." (Tr. 241.) Plaintiff further testified that she socialized with her boyfriend and went out to dinner about once each week, (Tr. 244-45, 247.), and that she could lift only a couple of pounds, or about as much as her purse weighed. (Tr. 245.) Finally, she claimed that she experienced chest pain from remaining in the same position for long periods of approximately "an hour or two." (Tr. 246.)

### III. ALJ's Decision

On August 25, 2005, the ALJ denied Ms. Terminello's claim after applying the five-step sequential analysis set forth in the Social Security Regulations (the "Regulations"). See 20 C.F.R. §§ 404.1520, 416.920; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). At the first step, the ALJ found that Ms. Terminello had not engaged in "substantial gainful activity" during the alleged disability period, despite working up to thirty-two hours per month at a medical office. At steps two and three, the ALJ found that her heart condition was severe but that it did not render her presumptively disabled because it was not one of the impairments listed in the Regulations. See 20 C.F.R. pt. 404, subpt. P, app. 1.

At step four, the ALJ reviewed the record medical evidence and hearing testimony and made a determination of Ms. Terminello's residual functional capacity. The ALJ concluded that, although she suffered some impairment, she retained the ability to perform light work and to return to her past relevant work, as defined in the regulations at 20 C.F.R. § 404.1565. Specifically, the ALJ found that plaintiff could lift and carry up to ten pounds and stand, walk and sit for six hours per eight hour day, giving her the ability to perform the job of a receptionist as it is generally performed in the national economy. Finally, the ALJ found that Ms. Terminello was not under a disability as defined in the Act at any time through the date of the decision. See 20 C.F.R. § 404.1520(f).

Ms. Terminello claims that the ALJ erroneously wrote that she had not been hospitalized since her atrial septal defect surgery in June 1999. (Tr. 16.)  However, because the ALJ also recognized and considered that plaintiff had another procedure for removal of sternal hardware in April 2000, among other reasons summarized below, this error is immaterial. (Tr. 15, 174.)

**IV.  The Instant Action**

On November 9, 2005, Ms. Terminello brought this action for review of the ALJ's decision.  Thereafter, the parties filed the instant cross-motions for judgment on the pleadings.  The Court

9

finds that substantial evidence in the record supports the ALJ's determination that Ms. Terminello was capable of performing her past relevant work as a receptionist based on her residual functional capacity during the alleged disability period, from January 1, 2004, through the date of the hearing.

### Applicable Legal Standards and Scope of Review

Under the Social Security Act, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "The impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Shaw v. Chater, 221 F.3d 126, 131-32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)). The five-step sequential analysis described above governs whether an individual is disabled or not. See 20 C.F.R. §§ 404.1520, 416.920; Berry, 675 F.2d at 467.

The claimaint is entitled to a "full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the act." Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). In evaluating a

claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . educational background, age and work experience." Dumas v. Schweiker, 712 F.2d 1545, 1550 (2d Cir. 1983).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or the decision is based on legal error." Shaw, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted). In conducting this review, a court "considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

Further, the administration "generally give[s] more weight to opinions from [a claimant's] treating sources . . . . If [the administration] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical

11

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

The administration applies various factors in situations where a treating physician's opinion is not given controlling weight. Id. These factors include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Id. In addition, the administration "will always give good reasons in [its] notice of determination or decision for the weight [it] gives [claimant's] treating source's opinion." Id.

## Analysis

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because: (1) substantial evidence does not support the ALJ's determination that she can do her prior work as a receptionist; (2) the ALJ rejected some of the testimony of Dr. Sander despite the treating physician rule; and (3) the ALJ rejected some of Ms. Terminello's testimony about her own limitations. The Court finds that the ALJ permissibly

12

made each of these determinations based on the evidence in the record.

**I. The Finding that Ms. Terminello Can Perform Her Past Work Is Supported by Substantial Evidence**

Substantial evidence supports the ALJ's determination that, despite her chest pain and fatigue, Plaintiff had the residual functional capacity to perform her past work as a receptionist during the alleged period of disability. Residual functional capacity is defined as "what an individual can still do despite his or her limitations." See Social Security Ruling No. 96-8p. Specifically, the ALJ determined through a "function-by-function" assessment that Ms. Terminello could walk and carry up to ten pounds and stand, walk and sit for six hours per eight hour day.[3] See id.

The medical records provide substantial evidence that plaintiff could perform the tasks required of a receptionist or a medical biller. Dr. Matos's April 2004 report on Ms. Terminello indicated that her chronic chest pain could be relived by Aleve, and that she denied shortness of breath, palpitations and dizziness. (Tr. 174.) Plaintiff's August 7,

---

[3] Though not raised by the parties in their cross-motions for judgment on the pleadings, the ALJ categorized this functional capacity, generally describing sedentary work, as light work. See Hr'g Tr. 16; see also 20 C.F.R. § 404.1567. Nevertheless, Ms. Terminello's past relevant work as a receptionist only required the level of functionality as determined by the ALJ, or sedentary work. See Dictionary of Occupational Titles 237.367-038.

13

2003, echocardiogram indicated normal ventricular size and systolic function. Though the report revealed moderate mitral regurgitation and mild tricuspid valve regurgitation, Dr. Matos commented on multiple occasions that plaintiff was "doing well." (Tr. 179-87.)

Dr. Sander's determination that Ms. Terminello suffered from "fatigue" and "pressure and aching pain" in her chest does not contradict the fact that Ms. Terminello can perform her past work. "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe . . . as to preclude any substantial gainful employment." Dumas, 712 F.2d at 1552. Ms. Terminello's medical records do not indicate pain so severe as to prevent her from performing the full range of receptionist work. She stated that her previous job as a medical biller was "sedentary," did not require any lifting, and that she sat for five hours in a six hour workday.

From an exertional standpoint, the opinion of Dr. Sander fully supported the ALJ's functional assessment. Dr. Sander's reports indicate that plaintiff was capable of lifting less than ten pounds, but had no limitations in her ability to stand, walk or sit. As Dr. Sander employed Ms. Terminello as a "fill-in" receptionist for eight hours per week, he also mentioned that she had good abilities to follow work rules, deal with the public, and maintain attention and concentration in carrying out

14

job instructions. Given that Ms. Terminello's job as a receptionist and previous job as a medical biller required lifting or carrying less than ten pounds, the opinion of Dr. Sander was consistent with the ALJ's finding.

Moreover, Dr. Wakeley's review of the evidence indicated that plaintiff could frequently carry up to twenty-five pounds, occasionally carry up to fifty pounds, and could sit and stand or walk for up to six hours with no limitations on pushing or pulling. This supports the conclusion that she was capable not only of sedentary or light work, but also of "medium work," which demands a much higher level of physical exertion. See 20 C.F.R. § 404.1567(c). Dr. Wakeley added that plaintiff's chest pain was "clearly non-cardiac in nature."

**II. The Treating Physician's Finding About Stress Was Permissibly Rejected**

The ALJ properly disregarded the assertion by Dr. Sander that Ms. Terminello had no useful ability to work because of her stress and depression. Under the treating physician rule, the ALJ need not give controlling weight to the treating physician's opinion where it is not well-supported by medical evidence and is inconsistent with other substantial evidence in the case record. See Clark, 143 F.3d at 118 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). Here, the ALJ permissibly rejected the treating physician's assertions that plaintiff

could not work because of stress and depression for two main reasons. First, in addition to being Dr. Sander's patient, Ms. Terminello worked as a "fill-in" receptionist for Dr. Sander. This shows he likely believed she had at least some useful ability to function in a work setting. Second, Dr. Sander noted on the same evaluation of plaintiff's work capacity that her abilities to make occupational and performance adjustments were good, very good, or unlimited, contradicting his own assertions. (Tr. 229-31.) In particular, Dr. Sander opined that Ms. Terminello had an "Unlimited/Very Good" ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, and deal with work stress, and a good ability to maintain attention and concentration in carrying out job instructions.

Moreover, other medical and testimonial evidence also supported the ALJ's disregard of Dr. Sander's assertion, including the fact that Ms. Terminello worked and that her depression did not keep her from certain household activities. Though plaintiff took Xanax to treat her anxiety, she testified that she had not seen a psychiatrist for depression. (Tr. 213, 241.) The ALJ properly rejected Dr. Sander's statement that plaintiff could not function in a work setting. Consequently, the ALJ did not need to give controlling weight to his opinion.

### III. The ALJ Permissibly Rejected Some of Ms. Terminello's Testimony About Her Own Limitations

Ms. Terminello's testimony does not establish that she was unable to perform her past work as a receptionist or a medical biller.  Though she testified that her chronic chest pain and chronic fatigue syndrome kept her from working, she indicated that her previous job was "sedentary," did not require any lifting, and that she sat for five hours in a six hour workday.  While a claimant's testimony about limitations caused by pain, unsupported by objective medical evidence, may ground a finding of disability in appropriate cases, see Echevarria, 685 F.2d at 755, the ALJ is "entitled to rely on the medical record and his evaluation of claimant's credibility in determining whether claimant suffers from disabling pain." Dumas, 712 F.2d at 1553.

Here, the ALJ found Ms. Terminello's complaints to be exaggerated in view of her testimony that, since her condition began, she has worked as a fill-in receptionist in her treating physician's office, does light cooking and limited exercise, and goes out to dinner.  Based on the objective medical evidence and plaintiff's own testimony, the ALJ concluded that Ms. Terminello "is leading an active existence in spite of her allegations."

### Conclusion

In sum, because the ALJ reached a decision supported by substantial evidence, defendant's motion for judgment on the

17

pleadings is GRANTED, and plaintiff's cross-motion is DENIED.

This case is closed.

**SO ORDERED.**

Dated:   New York, NY
         July 31, 2009

                                              John F. Keenan
                                          United States District Judge